Good morning, Your Honor. Stanley Friedman on behalf of Appellant George C. Chen Corporation. May it please the Court, we represent the appellant in this case, and respectfully, the primary issue before this Court are three ornaments that were in the wind chimes in this case, and the third ornament is a frog. Each party, both the appellant and the respondent, marketed wind chimes that he had each of these three ornaments. The District Court found that the ornaments marketed by Cadona were identical to the ones marketed by Chen, and respectfully, I think if I could make one point this morning, that would be the most the Moonstar configuration and the frog configuration, and found that the ornaments on the Cadona wind chimes and the ornaments on the Chen wind chimes were identical. Now this is a summary judgment action. Should that issue be the jury's? Respectfully, Your Honor, neither party has challenged it. So there's no material issue? They are identical? The District Court so found, I think if the Court had found that it was a tribal issue, then actually I don't think we would be before the Court, because then the Court, I believe, would have denied the summary judgment motion, and we wouldn't have been before the Court. So to the extent that the way that I'm seeing it, it's a win under either circumstance for the appellant, because if, indeed, it was a jury question, then the Court should have denied the motion for summary judgment, and the case proceeded to trial. Alternatively, and the argument that I'm about to present to Your Honor, that even if we were to accept the Court's factual determination that it's identical, then the Court would reverse the judgment in this case, because of the Court finding that the three items are identical. In the record, the Court finds that the dolphins for both Kedona and Chen are identical. It's at the appellant's excerpts of record at the bottom of page 129 and top of page 130. For the Moonstar configuration, the Court uses the same word quote identical. That's also at the appellant's excerpts of record on page 130, and also that the frogs are identical. That's the word that the District Court uses, and that's also at the appellant's excerpts of record 130. Because the District Court found that the items are identical, the issue becomes whether there was a tribal issue of fact as to whether there was a thin copyright of these items, and whether this thin copyright was violated by Kedona, the respondent before the Court. Well, I don't quite understand that, because if they're identical, and if you're entitled to thin protection, there is nothing to try. Well, I would agree, Your Honor, yes. All right. So the question isn't, I mean, there would be nothing to try on that theory. So the question is, is your frog, or your dolphin, or your man in the moon entitled even to thin protection? Yes, Your Honor. In terms of that, I think it's actually a novel issue before the Court. Well, not really. We've had jellyfish, and we've had stuffed animals, and we've had graphical computer user interfaces. So it really isn't. So the real question is whether you've made a showing of a more than trivial contribution. In terms of that, Your Honor, respectfully, I would say that we have. And I think sometimes the Courts talk about it in terms of originality. Have we contributed enough originality to the particular frog, let's say, or the dolphin, or the moon star? What? I'm sorry? What? Well, for example, the composite of the items, what they're made of. For example, whether it's acrylic, or whether it's stone, or whether it's wood. You can't protect the idea of an acrylic animal sculpture. No, not the concept of an acrylic animal sculpture, yes. Right. So you look at the record here, and this is the real problem I'm trying to focus you in on. Look at the record and see essentially nothing to indicate any kind of non-trivial creative contribution to the idea of an acrylic frog, man in the moon, or dolphin sculpture. I would agree that a particular thing in nature cannot be copyrighted. But if an artist were to add something to it... Okay, so where in the record is there an indication of what Chin added to that idea, that the in your view is not a necessary part of expressing the idea of an acrylic frog, dolphin, or man in the moon object? Yes, Your Honor. By looking at the items, one can tell the coloring. So, for example, the coloring of the items is significant. There are pictures in the back of this courtroom of trees, and I don't think one can copyright pictures of trees. But if one makes the coloring a certain way, or takes it at a certain time of day when they're shading, one can copyright that picture. Yes, and generally speaking, there is something in the record which shows what that non-trivial original contribution is. And I can't find it now. That may be missing something. Well, for example, Your Honor, I mean there's discussion in terms of the dolphin, how it's swimming, how its tail is twisted, whether its mouth is open, and that... And all dolphins basically have... I mean, it's nothing original to have a dolphin with a twisted tail that's swimming, or has its mouth open. So, what about the dolphin was a non-trivial contribution that Chin made? Well, for example, its position, its weight, its size, how old it appears in terms of the man and the moon, the contours of its face, whether its eyes were open, whether it has eyelashes, the size of its nose, that type of thing. Where is that in the record? Well, for example, there's a picture of the items attached to the motion for summary judgment. So one can derive that from the pictures that are attached to the summary judgment, which is in the appendix, and then also the appendix submitted by the respondent. Respectfully, I would think, Your Honors, analysis would be the area of inquiry if we weren't dealing with an issue of thin copyright. In terms of thin copyright, I don't believe that there's a requirement to show that level of originality. Oh, no. I mean, Satava, I don't know how to pronounce it, makes it very clear. Even in instance of thin copyright, there has to be some contribution of authorship that's non-trivial. Yes, Your Honor. And it's identified. I mean, it's always identified, and it's easy to look to see what the author claims as being his own contribution. I don't see that here, and that's what I'm looking for from you. Your Honor, I don't have that specific citation. Perhaps I could send something in supplementary, but I do believe there's discussion of, for example, the position of the tail. And I know Satava, for example, it talks about in terms of jellyfish, one cannot copyright the concept of the jellyfish swimming laterally, because jellyfish, apparently in nature, they swim laterally. So what I'm not arguing here is the fact that a dolphin swims in a certain way, but the fact that there's a certain twist of the tail, and that we're not comparing one item which is substantially similar to another item. We're comparing an item which is found to be identical. And when it's identical, I don't know, and I don't believe the cases say that there's that level of originality that's required. If it weren't identical, I think it would be. But I think the fact that somebody sees a frog and decides to make it a certain size and decides to make it a certain way, a certain composition, whether its eyes are open or not, the size of the nose on the moon, is sufficient in terms of an analysis for a thin copyright. I don't think it would be in terms of if the items were substantially similar or virtually identical. But in a situation where they're identical, I think that level of originality is sufficient. The interesting thing about Satava is that in that case, the court found that, as your Honor indicated, that's the case where there's a glass and glass jellyfish. And the court there was comparing two different types of jellyfish. And there were similarities, but they weren't identical. They weren't identical. They each had tendrils. They each had rounded bells at the bottom. But they weren't identical. There's two district court cases, which I found last evening in preparing for today. I just gave copies to counsel this morning. But they cite the Satava case as well. But in there, there was no finding of the two items being identical. One case, it's from the Central District Express LLC versus Fetish. And the other case from the Central District, they're both F-sub cases, Cosmos Julie versus Po Sun Han. Those cases, as well as in the Satava case, there's no finding of identicality. The Satava case talked about the glass and glass concept and said that one cannot copyright the concept of a jellyfish, a glass jellyfish within a jellyfish. Counsel, give those citations to the clerk after the argument, would you? Yes, Your Honor. Thank you. I will. And in the... Thank you, Your Honor. I will. The second point that the Satava case talked about in terms of jellyfish is that they were comparing tendrils between the two items, but the tendrils were not identical. They were, in the Satava case, the Ninth Circle was comparing the rounded bells at the bottom of the jellyfish, but they were, again, not identical. And in this case, we do have two things that are identical, and I think that's the distinction in terms of what's required in terms of originality. If the items were not identical, I think I would concede the point. But there's a finding by the court that the two items are identical, so I think any level of originality in terms of how an artist sees a frog or how an artist sees a jellyfish is sufficient to say that there's a thin copyright on the matter. In terms of the district court case, which obviously is not binding on this court, it was issued by Judge Wilson. It deals with embroidery on a... Comparison of embroidery on a camisole versus embroidery on a tunic. And there, the court found that there was a thin copyright violation, even though it was on two different items of clothing. It found that basically, since the embroidery on the two different items were identical, that there was a violation of the thin copyright. And the other case, Cosmos, talks about something being virtually identical. In terms of the originality, as indicated before, I think if we were dealing with a situation that was something that was virtually identical, as some of the cases talk about, or substantially similar, I think I would concede the point, perhaps, and indicate that there is not a valid thin copyright. But here we have a finding by the district court that reviewed the items that they were identical. And respectfully, I would submit that there was a valid copyright, and as indicated, I think in the decision, there was likely a violation of that copyright. And unless there are other questions, I'd like to reserve my remaining six minutes for rebuttal. Thank you, counsel. Thank you, Your Honor. Good morning. Mitch Tilner for Appellee Kedona. I think Judge Reimer has accurately identified the issue and the mode in which the court should analyze the problem. Counsel, is there any such thing as a generic frog or a generic dolphin? Absolutely. And that's what this case involves. The issue is not identity of the ornaments, which was counsel's emphasis. That goes to the second step in the analysis of copyright infringement. The first step is whether there's a valid copyright, whether the item is protectable, are you telling us that there never could be a copyright of a dolphin which was designed by the artist and unique in any respect? Your Honor, there certainly could be a copyrighted dolphin sculpture. The problem in this case, as Judge Reimer has noted, is that the record fails to show what original contribution Mr. Chen made to the generic frog. Are you conceding that these items are identical? The court so found that is really not relevant, I don't think, to the appeal. Well, I want you to answer my question. Well, they look identical to me, but I'm not the jury, you know. So it was appropriate for the judge to make that finding, that they were identical? I don't think it was necessary. Well, that's not my question. You're not quarreling with the fact that he looked at them, he found they were identical. I'm not quarreling with the fact that he said that in his order. Again, I think it was... But you're not saying that the jury had anything to decide. It was just clear they were identical. I don't think this case should be going to a jury, because identical or not, we don't have a protectable item here. Well, what would he have had to do to the dolphin to make it unique? He could have done multiple things, but he would need to tell the court in opposition to summary judgment what it is that he did in order to avoid summary judgment. Now here, Codona demonstrated in its motion that the frog and the dolphin were essentially sculptures that were inevitable or necessarily flowed from the physiology of a sitting frog or a swimming dolphin, over which no artist can claim a monopoly. That shifted the burden to the plaintiff to come in with evidence showing what original contributions he made to these animal creatures. He said that he didn't have anything before him. He drew it. This was his own drawing and his own characterization of a dolphin. That's not enough? Well, it may have come from him, but it has to be not only original, it has to be creative. And if it came from his mind, but he was simply duplicating the physiology of a sitting frog, which any other artist would likewise have to produce if they were making a sculpture of a frog, then even though it came from his mind, he was basing it on attributes of nature that anyone can see and anyone can use in a sculpture. But if you and I sat down and each drew a frog, they wouldn't look alike, would they? I don't know. They probably would look alike. I don't know. Well, not if I sat down and did a frog. It wouldn't look anything like you did. But the question is whether yours, I guess, would be an original drawing and mine just an incompetent drawing. Well, counsel's emphasis on the thin copyright doctrine is misplaced because that doctrine extends only to protect the original elements of the work. And this record does not tell the court what original elements were added to the generic, stereotypical sitting frog or swimming dolphin. We also have the moon star ornament at issue on appeal. Before you leave that, let me ask you a question. As I gather, your argument is that even if there were something original about the frog, your opponent couldn't prevail here on that basis unless at the time of summary judgment he had pointed out to the court what that original feature was. Is that correct? That's correct, because the copyright only extends to original contributions. That I understand, but it's not enough that the court could look at the document or at the frog and say, gee, that looks like something original to me. You're saying that at the time of summary judgment it's the obligation of your opponent to say to the court in his papers, here is what is original about the frog. Yes, your honor, yes. And this district court judge looked at the frog and said, this is truly an ordinary green frog sitting as it would in nature, and no reasonable trier of fact could find anything distinctive or original about this. Now, Mr. Chen, in opposing the motion, please tell me, please create a triable issue of fact as to what it is you contributed to this that is not inevitable in the concept, the idea of a sitting green frog. And the declaration, which appears at excerpts 104, does not meet that burden. The declaration says, I designed a frog that I thought my customers would like. Well, he hasn't answered the question. He says on the Moonstar ornament, I made subtle changes to the existing Moonstar works in the public domain, including Kadona's own Moonstar ornament. That doesn't answer the question. So the problem is there was no material issue of fact raised by these papers. Now, again, with the Moonstar ornament, the analysis is slightly different. That's not a creature from nature, of course. That's a fanciful creation. But there, Mr. Chen's declaration acknowledged there was, in fact, Kadona's motion showed there were prior ornaments identical to what the plaintiff came up with. And the plaintiff acknowledged, I made subtle changes to existing Moonstar products on the market, and I believe my changes improved the product in terms of marketability. That was his explanation. That doesn't create a triable issue of fact, whether there's any original contribution to the ornament so as to trigger thin copyright protection. So really the problem here is largely failure of proof, not identity, which, as I mentioned, the court need not reach. That's the second step in the analysis, which you reach only if you first conclude there is a protectable copyright in the work. Let's see. The poses. The briefs argue the poses of these animals are what is distinctive. The tail is uplifted on the dolphin. The mouth is open. The frog is sitting. This court in Satava basically said poses that are stereotypical, standard, stock, or inevitable, given the physiology of the creature, those poses are not protectable. There has to be an original contribution or original pose. And again, the record here does not disclose what, if anything, Mr. Chen contributed in the way of a pose. These were stereotypical forms, standard forms, and the district court correctly held they are simply not protectable. For that reason, we urge the court to affirm the summary judgment. Thank you, counsel. Your Honor, if I may, in my remaining time I'd like to address the originality concern of the court. The court had spoken to me about that and also Mr. Tilner. I think there's been much focus on the frog. But for a moment, if I could, I'd like to focus the court on the issue of the moon-star configuration. And perhaps that's my best case. If the court were to take a look at the supplemental excerpts of record at page 14, there's a picture. If the court wouldn't mind, maybe I'll just hold it up. There's a picture of the moon that's in the record. And as it indicated in the court's decision, the court had asked the parties to lodge the items. So the court actually had these items before it. And page 14 is a picture of the moon. And if one were to take a look at the moon, the moon configuration has full lips. So obviously the artist made a decision as to whether he wanted to have a moon. Well, Mr. Friedman, you know, we held a long time ago in the McDonald's man-in-the-moon-mask case that, you know, the crescent moon shape and the depiction of a human face in the center and even the color are stock elements that aren't protectable. So how do we know that there's anything about Chin's man-in-the-moon that takes it, that's non-stock? Yes, Your Honor. I think the Satava case and some of the other cases talk about the circumstances under which a compilation. Well, yeah, I know. I understand. There's still got to be some non-trivial contribution. And I was directing you specifically, since you were talking about the man-in-the-moon mask, to Pasea, which is the McDonald's man-in-the-moon case. It was a mask. And we said that the crescent shape of a moon and the human face in the center of it and the color of the moon as white or off-white are just stock elements when you think of the man-in-the-moon. So if I wanted to know what makes Chin's man-in-the-moon different, let's say, from the McDonald's man-in-the-moon, where would I look? How would I know what to look at? Yes, Your Honor. Well, for example, if the court were to, I would invite the court to take a look at page 14 of the supplemental Along the edge of the moon, there's decoration. It's not a standard man-on-the-moon, it appears to me. I haven't seen the original, but from the pictures here, it does look like there's some ornamentation along the side of the moon. So it's not the stock man-on-the-moon or man-on-the-moon concept. Well, but, you know, the trouble is that there's nothing to say that came from Chin. I mean, we start from the premise in this case that the man-on-the-moon was copied from prior art. I mean, there's prior works all over the place. And so there's nothing to show that the ornamentation wasn't copied. I don't know. I mean, maybe, maybe not. I just don't know, and that's the problem. Respectfully, I would say that the concept of the man-on-the-moon is longstanding and predates Chin's copyright. But there are enough differences to the man-on-the-moon presented here that it would take it out of that, given the ornamentation on the side. For example, I think if the eyes are out of proportion to the object, the nose is bulbous, in my view. There's wrinkles above the eyes. So that would be sufficient in the thin copyright context. We may have a different discussion in terms of whether if the items were not identical. But here, there's not an issue that they weren't identical. I don't believe there's an issue that they didn't come from the same mold. That was the mold that was created based on Mr. Chin's design. May I just ask you, if the judge, district judge, said they look identical to me, can you point out what's original about them? Were these things that you point out now argued to the judge in summary judgment? That the nose was bulbous, the wrinkles were different? It was before the court. Primarily, I think what the court was focused on was the declaration of George Chin. And in paragraph 7, it talks about how he designed these items. But from the oral argument, I don't see these items argued to the court. But certainly, it was before the court because it was part of the moving papers and the opposition. It's something that the court. Well, the question was, in the moving papers, were these differences pointed out? I don't know, Your Honor. Or was there a claim that these were original? I'm sorry, Your Honor? Was there a claim in the moving papers that these aspects that you point out were original aspects? The items that I just mentioned, I don't see in the declaration. I would have to look at the moving papers again to see. I'm not able to give the court a specific agency. Well, your opponent said in answer to the question that to survive summary judgment, not only does the item have to have some original features, but the court has to be advised of what those original features are. Do you disagree with that? I do not disagree with that. But here, the items were submitted. The court had pictures of the items, and in rendering its decision, it's throughout the court's decision, it says, I've compared these two items. So for appellate purposes, I think it's fair for me to point out whatever items were patent to the district court judge when he made his decision. Well, comparing the two items doesn't tell you what's original about one of them. Well, I think the originality part is in that Chen declaration at paragraph 9, where he talks about drawing the items and how the molds were created. Well, that doesn't tell you what's original about the items. It tells you he drew them. I agree, Your Honor, although there is some reference to the tail and how he decided the tail, and he wanted it to be cute, and so he made the tail a certain way, and he made the dolphin a certain way. All right. Thank you. Thank you, Your Honor. And that will be submitted. All right. The case just argued will be submitted.
judges: Fletcher, Reinhardt, Rymer